**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
JENNIFER GRATTON,

                         Plaintiff,

        - against -

UNITED PARCEL SERVICE, INC.
and HOWARD POPECK,

                         Defendants.
------------------------------------------------------------X

**ORDER**

CV 07-3071 (TCP) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     **PRELIMINARY STATEMENT**

Before the Court is a motion by Defendant United Parcel Service, Inc. ("UPS") seeking the Court's assistance in resolving a dispute that has arisen between UPS and Plaintiff Jennifer Gratton during the negotiation of a stipulated confidentiality order [DE 34][1]. The Court has reviewed UPS's letter motion as well as the written opposition submitted by Plaintiff [DE 35]. For the reasons set forth more fully below, UPS's motion is GRANTED in part and DENIED in part.

**II.**     **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff commenced this action alleging that Defendants UPS and Howard Popeck discriminated against her based on her gender in violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law. In particular, Plaintiff claims that she was subjected to a hostile work environment which caused her to suffer severe emotional distress. According to UPS, Plaintiff has also commenced a separate Workers' Compensation action

---

[1]     Defendant Howard Popeck did not file any papers in connection with this letter motion.

against UPS and its insurance carrier, Liberty Mutual. In that action, Plaintiff seeks Workers' Compensation benefits for "psychological injuries" she suffered "as a result of certain on-the-job conduct by" Defendant Popeck. DE 34 at 2. UPS emphasizes that "[c]entral to Plaintiff's workers' compensation case is her claim that her psychological conditions *resulted* from Mr. Popeck's conduct in the workplace." *Id.* The Complaint avers that this conduct began in December 2004.

On May 15, 2008, the parties appeared before me for a telephone status conference. As part of the Civil Conference Minute Order entered following that conference, I noted the following:

> Counsel for UPS represented that he had already begun to produce certain documents to Plaintiff last night. The parties intend to negotiate a confidentiality order and to submit it for the Court's endorsement. All parties are directed to abide by the understanding that documents produced by Defendants are to be treated as confidential until the parties' confidentiality agreement is submitted to and "so ordered" by the Court.

DE 21 ¶ 7.

UPS issued a subpoena seeking documents and deposition testimony from Karen Tukman, a licensed clinical social worker who had treated Plaintiff. *Id.* According to UPS, "[b]efore appearing for a [June 9, 2008] deposition, Ms. Tukman requested that Ms. Gratton first execute an Authorization and Release." *Id.* Plaintiff signed an Authorization and Release which provided as follows:

> I, Jennifer Gratton, hereby authorize and release Karen Tukman, LCSW, to disclose any and all information and documents in her possession, custody, and/or control regarding me, including but not limited to any and all treatment information; any and all information about my sessions with her; any and all healthcare information; any

> and all communications she has had with me, my representatives, or others acting on my behalf; and any and all psychotherapy and/or mental healthcare information; as well as any and all notes, emails, documents, communications, and/or information. By executing this Authorization and Release, I specifically intend to waive the social worker-patient privilege as well as any and all federal and state laws and regulations mandating the confidentiality of healthcare information in general and psychotherapy and mental healthcare information in particular. By executing this release I also explicitly authorize Ms. Tukman to give testimony at any deposition and/or at trial in the pending legal case in which I am plaintiff and United Parcel Service and Howard Popeck are defendants.

*Id.*, Ex. A.

According to UPS, Ms. Tukman revealed during her deposition that:

> [S]he intentionally withheld certain highly relevant information from the workers' compensation proceeding, at Plaintiff's repeated and explicit direction. *See* Exhibit B. The withheld information relates to Ms. Gratton's prior history of psychological conditions, and demonstrates that these conditions arose well *before* the events complained of in the workers' compensation case and this action. Ms. Tukman memorialized Plaintiff's instructions to her in handwritten notes, which she authenticated at her deposition.

*Id.* at 2. Plaintiff does not dispute that Ms. Tukman gave this deposition testimony, but she "vehemently denies [the substance of] these allegations" and contends that UPS has not "fully investigat[ed] the truth." DE 35 at 1.

UPS believes that it "need[s] to share this information with UPS's insurance carrier to address any past and ongoing fraud" that it claims has occurred in connection with Plaintiff's receipt of Workers' Compensation benefits. DE 34 at 2. Accordingly, following Ms. Tukman's deposition, UPS's counsel requested that Plaintiff consent to having UPS share the information learned during Ms. Tukman's deposition with UPS's insurance company, Liberty Mutual. In

3

particular, UPS sought Plaintiff's agreement that such disclosure would not violate "Magistrate Judge Tomlinson's Confidentiality Order, issued from the bench on or about May 15, 2008." DE 34, Ex. C. Plaintiff objected to any such disclosure and contended that "this information is subject to the confidentiality order issued from the bench and/or the one contemplated in said bench order (but never prepared by Defendants)." *Id.*, Ex. D.

After bringing this issue to the Court's attention via letter [DE 27, 29], the parties appeared for a telephone conference with Chambers on July 18, 2008 [*see* DE 30]. Counsel for UPS agreed to draft a proposed confidentiality order and submit it to Plaintiff for his input. During a subsequent status conference on August 13, 2008, the parties informed the Court that they could not agree on the terms of the proposed confidentiality order [*see* DE 32]. At that time, the Court informed Defendant UPS's counsel that he could file a letter motion seeking appropriate relief. Defendant UPS's letter motion followed, along with Plaintiff's opposition [*see* DE 34 and 35].

### III. THE PARTIES' CONTENTIONS

Plaintiff's proposed confidentiality order designates "testimony and documents regarding Plaintiff's mental, emotional, or physical condition or otherwise generated or provided by medical processionals who have seen Plaintiff for treatment" as "Highly Confidential – Attorney's Eyes Only." DE 35, Ex. A ¶ 2. Defendant UPS objects to this "unduly broad definition of the term 'Highly Confidential,'" because it would "cover all of Ms. Tukman's deposition testimony (including portions wholly unrelated to her medical condition and/or treatment) and all of Ms. Tukman's handwritten notes (including those portions memorializing Plaintiff's alleged directives to withhold information from Liberty Mutual)" [DE 34 at 3]

4

(emphasis deleted). UPS argues that Plaintiff "knowingly and willingly waived any right to confidentiality in any information generated or provided by Ms. Tukman," including any protections under HIPAA and other federal and state statutes, by signing the Authorization and Release. *Id.* at 4. Further, UPS asserts that the information it wants to share with Liberty Mutual does not constitute protected medical records but, rather, "relates exclusively to certain instructions Plaintiff gave to Ms. Tukman regarding what information should and should not be disclosed to UPS's insurance carrier in the workers' compensation case." *Id.* UPS has attached, as Exhibit B to its letter motion, redacted portions of Ms. Tukman's deposition transcript as well as redacted documents that it wishes to produce to Liberty Mutual. UPS further maintains that "public policy strongly rejects Plaintiff's efforts to conceal her apparent fraud." *Id.* Finally, UPS asserts that both it and Liberty Mutual have incurred almost $300,000 in connection with payment of Plaintiff's Workers' Compensation benefits, and that they are entitled to attempt to recoup these funds if Plaintiff's receipt of these benefits was based on any fraud. *Id.* at 5. UPS requests that the Court enter its proposed confidentiality order, *id.*, Ex. F, which omits Plaintiff's proposed definition of "Highly Confidential" information and contains the following additional paragraph:

> Nothing in this Confidentiality Agreement shall be read to bar UPS from sharing with Liberty Mutual Insurance Company and its counsel the documents attached as Exhibit B to UPS' Letter Motion of August 19, 2008, or to bar the use of that information in connection with Workers' Compensation Case Number WC #205300815.

*Id.* at 5-6.

In opposition, Plaintiff argues that if UPS is permitted to "inform Liberty Mutual of [the] allegations of [Plaintiff's] insurance fraud," the likely result will be the "dissemination of

some of Plaintiff's therapy records, which include Ms. Tukman's notes regarding alleged instructions from Plaintiff and/or her workers' compensation counsel." DE 35 at 2. Plaintiff acknowledges that she has placed her medical condition at issue in this action by asserting claims for emotional distress damages. However, Plaintiff argues that "[a]t issue in this action is the extent to which Plaintiff was emotionally harmed by Defendants' actions, not what fraud Plaintiff is alleged to have perpetrated in the separate venue of workers' compensation." *Id.* According to Plaintiff, her execution of the Authorization and Release was intended only to authorize disclosure of Plaintiff's medical records "to Defendants' counsel for the purposes of litigation" and to "protect Ms. Tukman in her giving testimony, not to allow UPS to disclose as it wishes." *Id.* Plaintiff asserts that the records UPS seeks to turn over to Liberty Mutual are indeed medical records and are entitled to the protections of confidentiality. *Id.*

### III. APPLICABLE LAW

Essentially, the parties are asking the Court to determine whether the documents attached to UPS' letter motion as Exhibit B are entitled to a "confidential" designation that would restrict their disclosure. Federal Rule of Civil Procedure 26(c) permits the Court to issue a protective order limiting the scope of discovery or disclosure. *See United States v. N.Y. City Bd. of Educ.*, No. 96-CV-374, 2005 WL 1949477, at *1 (E.D.N.Y. Aug. 15, 2005); Fed. R. Civ. P. 26(c)(1). To secure a protective order, the party resisting disclosure must demonstrate that the information sought is confidential, *Am. Std. Inc. v. Pfizer Inc.*, 828 F.2d 734, 740 (Fed. Cir. 1987), and that "good cause exists for issuance of that order." *In re Agent Orange Product Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987); *see Brookdale Univ. Hosp. & Med. Ctr. v. Health Ins. Plan of Greater N.Y.*, No. 07-CV-1471, 2008 WL 4541014, at * 1 (E.D.N.Y. Oct. 7, 2008) ("Pursuant to Federal

Rule of Civil Procedure 26(c), a protective order may only be entered by the court upon a showing of 'good cause.'"). A showing of good cause requires a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993) (internal quotation marks omitted).

IV. **DISCUSSION**

    A. **Protections Under HIPAA**

Plaintiff contends that the documents attached to UPS' letter motion as Exhibit B (the "Documents") are confidential medical records. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") was enacted to ensure the confidentiality of "protected health information" maintained by "covered entities." *See Del Plato v. Meyeroff*, No. 05-CV-0881S, 2008 WL 398547, at *3 (W.D.N.Y. Feb. 12, 2008); 45 C.F.R. §§ 164.502(a); 164.508(a)(1). The Court presumes that Ms. Tukman is a "covered entity" as the term is defined by HIPAA because neither party has presented any argument to the contrary. The issue becomes, then, whether the Documents at issue contain "protected health information."

"Protected health information" is defined as "individually identifiable health information" that is transmitted or maintained in electronic or any other medium. 45 C.F.R. § 160.103. In turn, "individually identifiable health information" is defined as any information, whether oral or recorded in any form or medium, that:

> (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and
>
> (2) Relates to the past, present, or future physical or mental health condition of an individual; the provision of health care to an

> individual; or the past, present or future payment for the provision of health care to an individual; and
>
> > (I) That identifies that individual; or
> >
> > (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

*Id.*

The parties have not provided the Court with any specific arguments as to whether the Documents constitute "protected health information" under HIPAA. Moreover, the Court's own research has revealed a dearth of case law precisely defining the contours of this category of information. The Documents include: (1) a redacted portion of Ms. Tukman's deposition transcript in which she authenticates and describes the documents marked as Tukman Deposition Exhibits 36 through 41; (2) Tukman Deposition Exhibits 36 and 37 which are letters dated June 8 and September 18, 2006, addressed to Ms. Tukman from Liberty Mutual, requesting Plaintiff's treatment records for specified dates and containing Ms. Tukman's handwritten notes; (3) Tukman Deposition Exhibits 38 and 39 which are Ms. Tukman's redacted handwritten treatment notes for Plaintiff dated October 11 and December 8, 2006; and (4) Tukman Deposition Exhibit 40 which is a typewritten "Treatment Summary" for Plaintiff dated April 30, 2006 and signed by Ms. Tukman.[2] DE 34, Ex. B.

Tukman Deposition Exhibits 36 and 37 are form letters sent by Liberty Mutual to Ms. Tukman enclosing Plaintiff's "signed medical authorization form" and requesting Plaintiff's "medical records and x-ray reports (not x-rays)" for certain period of time. The letters state that

---

[2] Although UPS provided the Court with that portion of the transcript from Ms. Tukman's deposition in which she discusses Tukman Deposition Exhibits 36 through 41, UPS did not provide the Court with Tukman Deposition Exhibit 41 itself.

the requests are "in regards to this patient's Workers' Compensation claim." Both letters contain Ms. Tukman's handwritten notes. During her deposition, Ms. Tukman testified that these handwritten notes document instructions Plaintiff relayed to Ms. Tukman, apparently from Plaintiff's retained Workers' Compensation counsel, regarding the manner and extent to which Ms. Tukman was to provide records in response to Liberty Mutual's request. Having reviewed Tukman Deposition Exhibits 36 and 37, as well as the portion of Ms. Tukman's deposition transcript in which she discussed these exhibits (*see* DE 34, Ex. B at Tr. 114:19 – 122:3), the Court finds that these documents do not relate to any past, present, or future physical or mental health condition of Plaintiff, the provision of health care to Plaintiff, or to the past, present or future payment for the provision of health care to Plaintiff. Accordingly, these documents do not contain "protected health information," as defined in the HIPAA statute.

Ms. Tukman testified during her deposition that Tukman Deposition Exhibits 38 and 39 are handwritten notes she created during the October 11, 2006 and December 8, 2006 treatment sessions with Plaintiff. These treatment notes have been heavily redacted. The handwritten notes which remain visible document Plaintiff's conversations with Ms. Tukman in which Plaintiff relayed instructions from her Workers' Compensation counsel as to the extent of the information Liberty Mutual was entitled to receive in connection with Plaintiff's Workers' Compensation case. The Court finds that these documents, and the portion of Ms. Tukman's deposition transcript in which she discusses these documents (DE 34, Ex B at Tr. 122:4 – 125:4) do not contain "protected health information" under HIPAA. These documents do not relate any of the past, present, or future physical or mental health condition of Plaintiff, the provision of

health care to Plaintiff, or to the past, present or future payment for the provision of health care to Plaintiff.

With respect to Tukman Deposition Exhibit 40 and the portion of Ms. Tukman's deposition transcript which discusses this document, however, the Court finds that these materials contain information regarding the provision of health care[3] to Plaintiff because they discuss the nature of the treatment she received from Ms. Tukman. Similarly, the Court finds that the portion of Ms. Tukman's deposition transcript relating to Tukman Deposition Exhibit 41 (which exhibit was not produced to the Court) also involves a discussion of the type of treatment Ms. Tukman provided to Plaintiff. Accordingly, the Court finds that Tukman Deposition Exhibit 40 and the portions of Ms. Tukman's deposition transcript that discuss Tukman Deposition Exhibits 40 and 41 (DE 34, Ex. B at Tr. 125:5 – 128:16) constitute "protected health information" within the meaning of HIPAA.[4]

For these reasons, the Court finds that of the Documents provided to the Court, Tukman Deposition Exhibits 36 through 39, along with the accompanying portions of Ms. Tukman's deposition transcript (DE 34, Ex. B at Tr. 114:19 – 125:4), do not constitute "protected health

---

[3] The term "health care" is defined in the HIPAA regulations as including "therapeutic . . . and counseling . . . with respect to the physical or mental condition . . . of any individual." 45 C.F.R. § 160.103.

[4] UPS argues that Plaintiff "waived any right to confidentiality she may have regarding" these documents by signing the Authorization and Release. DE 34 at 1. HIPAA regulations require, however, that any authorization for the release of protected health information specify "[t]he name or other specific identification of the person(s), or class or persons, to whom the covered entity may make the requested use or disclosure" and provide a "description of each purpose of the requested use or disclosure." 45 C.F.R. § 164.508(c)(1)(iii), (iv). Even if the Court were to find that the Authorization and Release sufficiently specified the identity of the recipient of this information, the Authorization and Release clearly limits the use of such information to this pending federal lawsuit between Plaintiff and Defendants UPS and Popeck.

information" that would be precluded from disclosure pursuant to the terms of HIPAA. The Court further finds that Tukman Deposition Exhibit 40, as well as the accompanying portions of Ms. Tukman's deposition transcript which refer to Tukman Deposition Exhibits 40 and 41 (DE 34, Ex. B at Tr. 125:5 – 128:16), are "protected health information" whose disclosure is prohibited by HIPAA.

      B.      **Protections Under New York State Social Worker-Patient Privilege**

The Court next examines whether Tukman Deposition Exhibits 36 through 39 and the accompanying portions of the transcript from Ms. Tukman's deposition, are protected from disclosure by New York State's statute defining the "Social Worker-Patient Privilege." New York's Civil Practice Law and Rules Section 4508(a) provides, in relevant part:

> (a) **Confidential Information privileged**. A person licensed as a licensed master social worker or a licensed clinical social worker . . . shall not be required to disclose a communication made by a client, or his or her advice given thereon, in the course of his or her professional employment . . . ; except:
>
>     1.    that such social worker may disclose such information as the client may authorize;
>
>     2.    that such social worker shall not be required to treat as confidential a communication by a client which reveals the contemplation of a crime or harmful act . . . .

NY CPLR § 4508(a). The party asserting the existence of the privilege bears the burden of establishing the following elements: (1) the statements at issue were made to a "certified social worker acting in a professional capacity;" (2) "the statements were made in order to enable a [social worker] to act in his professional capacity;" (3) "the information was intended to be

confidential;" and (4) "the information was necessary for treatment." *People v. McHugh*, 478 N.Y.S.2d 754, 758 (N.Y. Sup. Ct. 1984).

The Court finds that Tukman Deposition Exhibits 36 through 39 and the accompanying portions of the transcript from Ms. Tukman's deposition do not contain information that "was necessary for treatment." *See id.* Rather, these redacted documents (and the accompanying deposition testimony describing them) contain Ms. Tukman's transcription of directions Plaintiff relayed to her specifying which documents and information Ms. Tukman should provide to Liberty Mutual in connection with Plaintiff's Workers' Compensation case.

Accordingly, New York State's "Social Worker-Patient Privilege" does not protect from disclosure Tukman Deposition Exhibits 36 through 39 and the accompanying portions of the transcript from Ms. Tukman's deposition.

### C. Other Reasons for "Highly Confidential – Attorney's Eyes Only" Designation

In addition to arguing that Tukman Deposition Exhibits 36 through 39 and the accompanying portions of the transcript from Ms. Tukman's deposition are confidential medical records, Plaintiff asserts that these documents should be designated as "Highly Confidential – Attorney's Eyes Only" because (1) a plaintiff's medical condition "is often at issue in employment discrimination cases" and (2) allowing the disclosure of these documents in this instance "will have a chilling effect on the disclosure of mental health records in future employment discrimination cases." DE 35 at 2. Putting aside the fact that the Court has already found that Tukman Deposition Exhibits 36 through 39 and the accompanying portions of the transcript are not "medical records" protected by HIPAA or the New York State "Social Worker-

Patient Privilege," the Court is not persuaded by Plaintiff's policy argument. These documents appear, on their face, to bear some connection to Plaintiff's compliance with Liberty Mutual's request for documents in order to resolve Plaintiff's Workers' Compensation claim. While the Court takes no position on whether these documents evidence any type of fraud or untoward activity on Plaintiff's part, the Court finds that preventing the disclosure of these documents will not have any "chilling effect" on the prosecution of future employment discrimination claims in other cases.

Accordingly, Plaintiff has failed to make any specific showing of "good cause" to justify designating Tukman Deposition Exhibits 36 through 39 and the accompanying portions of the Tukman transcript as "Highly Confidential – Attorney's Eyes Only."

## V. CONCLUSION

For the reasons set forth above, the Court finds that Tukman Deposition Exhibits 36 through 39 and the accompanying portions of the Tukman transcript (DE 34, Ex. B at Tr. 114:19 – 125:4) are not entitled to Plaintiff's proposed "Highly Confidential – Attorney's Eyes Only" designation.

However, because Tukman Deposition Exhibit 40 as well as the accompanying portions of Tukman's transcript discussing Tukman Deposition Exhibits 40 and 41 (DE 34, Ex. B at Tr. 125:5 – 128:16) are "protected health information" whose disclosure is prohibited by HIPAA, the Court finds that there is "good cause" to designate these documents as "Highly Confidential – Attorney's Eyes Only." *See Brookdale Univ. Hosp. & Med. Ctr.*, 2008 WL 4541014 at *2. Accordingly, the second to last sentence of paragraph 2 of the proposed Confidentiality

Stipulation should end with the phrase "or Highly Confidential." The last sentence of paragraph 2 of the Confidentiality Stipulation should read as follows:

> Notwithstanding the foregoing, the following documents shall be designated as "Highly Confidential – Attorney's Eyes Only": (1) Tukman Deposition Exhibit 40; and (2) Transcript from the June 9, 2008 deposition of Karen Tukman, page 125, line 5 through page 128, line 16.

Paragraph 12 of UPS's proposed Confidentiality Stipulation, DE 34, Ex. F, is not to be included in the parties' Confidentiality Stipulation.

The parties are directed to file on ECF a revised Confidentiality Stipulation which incorporates these directives no later than December 1, 2008.

**SO ORDERED.**

Dated: Central Islip, New York
November 14, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge